UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTONIO DAVENPORT                    CIVIL ACTION NO. 11-cv-1927

VERSUS                               JUDGE HICKS

WARDEN, LOUISIANA STATE              MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish jury convicted Antonio Davenport ("Petitioner") of armed robbery. Petitioner was adjudicated a second-felony habitual offender and sentenced to 50 years imprisonment. He pursued a direct appeal, State v. Davenport, 978 So.2d 1189 (La. App. 2d Cir. 2008), writ denied, 999 So.2d 748 (La. 2009), and a post-conviction application. He now presents several claims in a petition for federal habeas corpus relief. For the reasons that follow, it is recommended the petition be denied.

**Sufficiency of the Evidence**

### A. The Evidence

Samuel Jeffers, a disabled Vietnam veteran (Tr. 113-59), had his disability benefits payments sent directly to a loan company to which he owed money. The company deducted the payment he owed, and Jeffers would pick up the difference in cash. On an occasion when Jeffers received a few thousand dollars in past due benefits, the loan company did not have enough cash on hand, so they gave Jeffers some cash and about six traveler's checks or

money orders for $1,000 each. (The testimony is not clear on the form of the financial instrument.)

Mr. Jeffers lived near the Salvation Army shelter, and he had struck up a friendship with two women, Aisha Pouncy and Meacha Davenport, who had been staying there.  After Jeffers collected his money, he suggested to Pouncy and Davenport that they rent a truck and "just kind of get around a little bit."  They first went by cab to a bank to cash some of the checks.  Jeffers testified that he started with six of the checks, and he cashed two of them at the bank for $2,000.  Jeffers entered the bank alone, but Davenport later followed him in and saw that he cashed two of the checks.

The group then went by Mr. Jeffers' sister's house to repay her some money, and Jeffers next intended to go to his daughter's house and give her some money.  Ms. Davenport, however, said that she had not seen her mother in a year and wanted to drive up to the Cooper Road area for a visit. Another (unnamed) man joined the group somewhere along the way.

Mr. Jeffers testified that he had been drinking brandy during the day, and he took his cup inside when they arrived at the home for the visit.  He handed out some small amounts of money to some young children who were there.  Soon after they arrived, Ms. Davenport went in the back of the house several times.  She eventually returned with a young man who she introduced as her son, Antonio (Petitioner).  Soon after, Jeffers and Ms. Pouncy went outside to sit in the truck.  Jeffers testified that the two had been making out for about five minutes when he heard his passenger side door open, looked to see what was going on, and

was hit in the face with a pistol.  Jeffers said that Petitioner was the gunman, and Petitioner stuck the gun in Jeffers' side and said, "Give it up."  Jeffers said he hesitated, and Petitioner said, "I ain't playing with you, man.  I'm fixing to blow your head off right now if you don't give me that money."  Jeffers said he asked Petitioner to not hurt him, reached in his pocket, and gave Petitioner all his money.  Petitioner and another man who was with him ran off.

Mr. Jeffers testified that he noticed, as he was being robbed, that Ms. Pouncy was tussling with someone.  Pouncy ran from the truck at about the same time the robbers left, and she used her cell phone to call police.  Ms. Pouncy described the robbery similarly, although she said they had just arrived at the truck when it happened.  She said that as she tried to get out of the truck and escape, Meacha Davenport was blocking her and saying, "Don't say nothing."  Don't say nothing. That's my son.  That's my son."  Pouncy got her purse and started walking.  At one point, two of the nephews approached her and "looked like they was going to do something, but I had my cell phone in my hand, dialing 911 then."  Pouncy testified that she had met Petitioner once before, at Christmas, a couple of weeks before the robbery. Tr. 170-201.

Detective Michael McConnell (Tr. 201-16) testified that police developed two suspects and put together photo lineups.  Ms. Pouncy identified Petitioner from the photo lineup.  Mr. Jeffers could only narrow it down to two of the photographs, but one of them was of Petitioner. At trial, both witnesses made courtroom identifications of Petitioner as the robber. No firearm was ever found, and there was no evidence of fingerprints, recovered cash or monetary instruments, or other physical evidence to link Petitioner to the crime.

Louisiana law defines armed robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.  La. R.S. 14:64.  The jury returned a unanimous verdict of guilty and finding that Petitioner used a firearm in the crime. Tr. 246-49.

### B.  <u>Jackson</u> and Section 2254(d)

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2789 (1979).  Petitioner has three issues that challenge the sufficiency of the evidence or argue that he is actually innocent. Each of his arguments will be considered, but they are all governed by the <u>Jackson</u> standard.

The state appellate court conducted a <u>Jackson</u> analysis on direct appeal and found the evidence sufficient. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable

application of the deferential <u>Jackson</u> standard.  <u>Parker v. Matthews</u>,132 S.Ct. 2148, 2152 (2012).

### C.  Analysis

Petitioner points to a number of what he contends are important conflicts in the evidence.  For example, Mr. Jeffers volunteered that he was a "weapons expert" during the testimony about the gun used in the crime.  Petitioner points out that Jeffers was, however, unfamiliar with the model 1911-A asked about by defense counsel.  Jeffers said, "I shoot weapons.  I don't identify them."  Tr. 146-48.  There was also disagreement between Jeffers and Aisha Pouncy about the nature of their relationship.  Jeffers said that the couple had a romantic relationship of sorts, once had sex, and that they were making out in the truck before the robbery.  Jeffers said he ended his pursuit of Pouncy when he learned that she was married.  Pouncy testified that there was no romantic relationship and that it was all in Jeffers' imagination.

The witnesses admitted that they had been drinking during the day, and Mr. Jeffers had Ms. Pouncy drive to avoid a potential DWI arrest (he had two already).  The testimony was that a group of four shared a bottle or perhaps two of brandy during the day. There was also mention of some Boone's Farm wine. Jeffers denied that he was intoxicated or impaired by the alcohol to the extent it would affect his ability to identify his attacker.  Petitioner points to a reference in a report that $16,000 was taken, which did not square with the testimony that only $6,000 was at issue.  Detective McConnell explained that this was likely the result of a handwriting or transcription error, which he had seen often in police reports.

The state appellate court reviewed the testimony, including Jeffers' and Pouncy's identifications of Petitioner as the man who held a gun to Jeffers and forced him to turn over his money.  The appellate court noted the inability of Jeffers to identify the specific type of weapon used by the robber, the admission of drinking before the incident, and various discrepancies in the testimony that were brought out on cross-examination.  It found that a jury was, however, entitled to credit Jeffers' testimony "despite the minor imperfections in his recollection."  A rational jury could have found the elements of armed robbery proven beyond a reasonable doubt, so the conviction was affirmed.  State v. Davenport, 978 So.2d at 1192-93.  This court may not overturn that adjudication unless it was an objectively unreasonable application of Jackson.

Mr. Jeffers and Ms. Pouncy offered testimony that an armed robbery occurred and that Petitioner committed it.  Petitioner argues that the two witnesses should not have been believed by the jury, but "under Jackson, the assessment of the credibility of the witnesses is generally beyond the scope of review."  Schlup v. Delo, 115 S.Ct. 851, 868 (1995).  "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).  And "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).  Petitioner's credibility argument is simply beyond the scope of what is permitted on review under Jackson, and the state court's assessment of the evidence was entirely reasonable.  Relief is not permitted on this claim.

**Sequestration of Witnesses**

The only trial witnesses were Mr. Jeffers, Ms. Pouncy, and Detective McConnell. Defense counsel began the trial by stating that he would "like the rule of sequestration." The court responded, "All right." Tr. 3. Petitioner has not pointed to any indication in the record that the rule was not honored, but he argued in his post-conviction application that the state court violated Louisiana statutes by allowing Jeffers to see the prosecutor identify the defendant during opening statements and allowing Pouncy to hear Jeffers testify before she took the stand.

Petitioner presented the argument in his post-conviction application and to this court as a claim for a violation of a "statutory right." Tr. 491. The trial court denied the application because such a claim is not a cognizable ground for post-conviction relief. Tr. 516-17. The state appellate court rejected the claim because no prejudice was demonstrated. Tr. 602. The Supreme Court of Louisiana denied writs without comment.

The habeas statute provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A prerequisite is that the petitioner exhaust his state court remedies with respect to a federal constitutional claim. Scott v. Hubert, 635 F.3d 659, 667 (5th Cir 2011), citing Baldwin v. Reese, 124 S.Ct. 1347 (2004). Petitioner presented the state courts with nothing but a state law claim. The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011). Habeas relief is therefore not

available even if Petitioner is correct on the state law issue.  See also  Passman v. Blackburn, 652 F.2d 559, 568-69 (5th Cir. 1981) and Pollard v. Cain, 2007 WL 4299991 (W.D. La. 2007) (state court's failure to follow its own sequestration rules does not raise federal constitutional questions cognizable in habeas).

**Prosecutor's Reference to Co-Defendant's Conviction**

The general rule in federal courts is that "evidence about the conviction of a co-conspirator is not admissible as substantive proof of the guilt of a defendant."  U.S. v. Ramos-Cardenas, 524 F.3d 600, 610 (5th Cir. 2008), quoting U.S. v. Leach, 918 F.2d 464, 467 (5th Cir. 1990).  But prosecutors have been allowed to blunt the sword of anticipated impeachment by eliciting on direct examination of a government witness that the witness was convicted in the case.  Leach, 918 F.2d at 467.  It appears many state courts also generally find inadmissible evidence of a co-defendant's conviction or acquittal.  State v. Weaver, 873 So.2d 909, 915 (La. App. 2nd Cir. 2004) (collecting cases).

The prosecutor in this case stated during opening statements that the police developed two suspects:  Meacha Davenport and Petitioner.  He then said:

> Ms. Meacha Davenport has already been convicted.  She has been convicted of simple robbery.  She's already had her trial in court.  She's already been convicted.  I plan to have her testify.  I don't know what she is going to say. I don't know if she's going to say anything at all.  She maintains her innocence even though she was convicted, so I don't know what she is going to say.

Tr. 110.

Petitioner argued in a pro se brief on direct appeal that the prosecutor made an improper reference to his mother's conviction for her role in the crime.  The appellate court

acknowledged the argument, noted a lack of objection by defense counsel, and said that any such objection would not have been successful because the conviction of Petitioner's mother "was a fact that defense counsel could not dispute." State v. Davenport, 978 So.2d at 1194. That was the last reasoned state court decision on the issue.

Improper jury argument by the state does not provide a basis for habeas relief unless the argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 106 S.Ct. 2464, 2471 (1986). The petitioner must also demonstrate prejudice by showing that the misconduct was so persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks. Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988); Turner v. Johnson, 106 F.3d 1178, 1188 n. 46 (5th Cir. 1997).

There is a reasonable argument that the statements about Meacha Davenport's conviction should not have been made because evidence of her conviction would not have been admissible to prove the guilt of her son.  And it does not appear that the prosecutor was attempting to blunt anticipated impeachment, given that Ms. Davenport continued to proclaim her innocence.  In any event, Ms. Davenport never took the stand, and this was the only reference to her conviction.  The jury was instructed that opening statements and closing arguments were not evidence.  Considering the single reference to the conviction, together with the testimony of the victims that  Ms. Davenport was involved in the robbery, this one mention of her conviction was not so prejudicial to give rise to any concern that the

conviction would not have occurred but for the reference to it.  Petitioner is not entitled to habeas relief on this claim.

**Prosecutor Vouching for Witness Credibility**

Petitioner argues that the prosecutor improperly vouched for the credibility of Mr. Jeffers and Ms. Pouncy in his closing argument.  As he reviewed the evidence, he stated as follows:

> You also have to consider the witnesses' credibility with regard to their statements.  Their credibility is good.  They don't have motive or incentive to lie.  If they lie, that's perjury, that's a felony.  There is no reason for them to lie.  For them to lie on Mr. Davenport would suggest that they have something to get out of this.  That's what Mr. Zaccaria (defense counsel) is trying to say.  No, they are not.  There is nothing for them to gain by telling a lie here in open court.  They don't gain anything from that.

The prosecutor continued to argue that Mr. Jeffers had no reason to lie.  At the end of his discussion, he said, "Therefore, I submit to you that his testimony is good and believable." Tr. 224-25.  With regard to Ms. Pouncy, the prosecutor made a similar argument that she had nothing to gain from giving a false testimony.  He argued:

> She doesn't have any incentive to lie.  None at all.  There is no reason why she would come in here and make up a story just to get someone in trouble.  Her statement is, I can't forget something like that.  I was scared.  I was frightened. I ran away.  I called the police.  I tried to help my friend.  All of that is good testimony. Tr. 225.

A prosecutor's vouching for the credibility of witnesses improperly suggests to the jury (1) that evidence not presented at trial but known to the prosecutor supports the charges against the defendant so that the conviction is not based only on evidence presented to the jury, and (2) that the prosecutor's opinion, which carries an imprimatur of the State, should

be trusted over the jury's own view of the evidence.  U.S. v. Young, 105 S.Ct. 1038 (1985); Woodfox v. Cain, 609 F.3d 774, 805 (5th Cir. 2010).  The test for improper vouching for the credibility of a witness is whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt.  U.S. v. McCann, 613 F.3rd 486, 495 (5th Cir. 2010).

"A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie, but cannot express a personal opinion on the credibility of witnesses." U.S. v. Gracia, 522 F.3d 597, 600 (5th Cir. 2008).  Even if the comments are deemed improper, they are subject to a harmless error analysis, and  a curative instruction may reduce risk of prejudice. Woodfox, 609 F.3rd at 805, citing Hughes v. Quarterman, 530 F.3d 336, 347 (5th Cir. 2008).  The comments "are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair." Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002). "Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or ... the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." Id. at 245.

Petitioner first raised this argument in a pro se brief on direct appeal.  The state appellate court found that the facts bearing on the witnesses' credibility were explored at length during the trial.  "And the prosecutor's arguments properly focused on those facts and were not an appeal to prejudice or other improper matters." State v. Davenport, 978 So.2d at 1193-94.

There was nothing in the prosecutor's argument that suggested he had other evidence, not known to the jury, that convinced him of Petitioner's guilt.  The prosecutor simply recited reasons that supported his contention that the witnesses were credible and submitted that their testimony was truthful.  He did not cross the line into offering personal opinion on the credibility of the witnesses.  His arguments were based on testimony and facts in the trial record.  Even if the comments were improper, the trial judge instructed the jury that their determination of the facts "must be based on evidence presented in open court" and that the "statement of the district attorney and the defense attorney are not to be considered by you as evidence."  Jurors were told that it belonged to them alone "to determine the weight and credibility of the evidence."  Tr. 234-35.  Such instructions have been found to mitigate the effects of potentially improper comments.  U.S. v. Neal Uy Lim, 500 Fed. Appx. 323, 326 (5th Cir. 2012).  There is certainly no basis to determine that there is any likelihood, but for the comments, Petitioner would not have been convicted.  The state court's rejection of this claim was correct.  There is no basis to overturn it under the deferential Section 2254(d) standard.

**Prosecutorial Misconduct; Identification Testimony**

Petitioner argued in his post-conviction application (Tr. 486-87) that the prosecution violated his right to due process and a fair trial by presenting witnesses who testified that Petitioner committed the crime.  He contends that the testimony of Mr. Jeffers and Ms. Pouncy was unreliable and perjured.  Petitioner offers no specifics to support this assertion; it appears to be based on the same contentions made above that the evidence is insufficient.

The State argues that Petitioner did not properly present this claim to the state courts beyond the trial court level, meaning state court remedies were not exhausted. That is likely a valid reason to reject the claim, but the court may also deny relief on the merits of an unexhausted claim. Section 2254(b)(2).

The Due Process Clause of the Fourteenth Amendment forbids the prosecution to knowingly to use, or fail to correct, perjured testimony. Giglio v. U.S., 92 S.Ct. 763, 766 (1972); Napue v. Illinois, 79 S.Ct. 1173, 1178-79 (1959). To prove that the prosecution has denied him due process of law by relying on perjurious testimony, a petitioner must prove that (1) a witness for the State testified falsely; (2) the State knew the testimony was false; and (3) the testimony was material. Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000), citing Giglio, supra. Petitioner has argued various reasons that the testimony of the State's witnesses should have been discredited by the jury, but he has not come close to showing that either of the identification witnesses testified falsely or that the State knew their testimony was false. There is simply nothing in the record to support Petitioner on this claim.

**Habitual Offender Adjudication**

Petitioner's armed robbery sentence was subject to enhancement based on his adjudication as a second-felony offender. Petitioner argues that the habitual offender proceeding was flawed because the State did not file the habitual offender bill of information and arraign Petitioner until the middle of the hearing, after evidence had already been heard.

Petitioner made a similar argument on direct appeal that this violated the habitual offender statute's provision that he have 15 days to file objections to the bill. Tr. 252-62.

The appellate court found that the prosecution filed the bill of information in the district court on March 14, 2007.  Trial of the bill was held three days later on March 17, at which time the prosecutor said he was then filing the bill and calling it for arraignment.  Several weeks earlier, in January 2007, the State had provided discovery that included the information on the prior conviction for forgery that was used to obtain the enhancement.  Defense counsel stated at the hearing that he was aware the prosecutor intended to file the bill and that he had received the discovery related to the bill.  Defense counsel did not object to the procedure. The appellate court found that the assignment of error had not been properly preserved.  It added that any error was subject to a harmless error review, and any error in the late filing of the bill "was surely harmless in this case."  State v. Davenport, 978 So.2d at 1194-95.

Petitioner's principal argument is that the State violated its own habitual offender statute, but federal habeas corpus relief does not lie for errors of state law.  Swarthout, 131 S.Ct. at 861.  Petitioner also attempts to characterize the claim as a violation of due process. Assuming he properly exhausted a federal due process claim, there is no basis for relief. Petitioner's counsel had all necessary information well in advance of the hearing, and Petitioner has not articulated any prejudice stemming from the proceedings. Every indication is that he is in fact a habitual offender and was correctly adjudicated the same.

Petitioner asserts a separate claim that his habitual offender procedure was illegal because he should have first been sentenced for armed robbery, had that sentence vacated, and then had his enhanced sentence imposed.  The argument is based solely on state law, so it provides no basis to grant federal habeas relief.

Page 14 of  24

**Excessive Sentence**

Petitioner faced a sentence of between 10 and 99 years for armed robbery.  The minimum sentence for armed robbery for a second-felony habitual offender is 49 and one-half years.  The trial judge sentenced Petitioner to 50 years imprisonment.  Petitioner argues in his habeas petition that the sentence, given his young age and non-violent criminal history, violated Art. 1, § 20 of the Louisiana Constitution.  He also argues that the trial court failed to comply with La. C.Cr.P. art. 894.1 by not giving particular reasons for the sentence.  He presented these claims on direct appeal.  The state appellate court found that the use of a gun and a threat to kill the victim if he did not comply was sufficient to warrant a sentence slightly above the minimum, and the essentially minimum sentence precluded the need for the trial court to give reasons to justify the sentence.  State v. Davenport, 978 So.2d at 1195-96.

As stated above, a federal court may grant habeas relief based only on violations of the federal constitution or laws.  Petitioner's arguments that the state courts did not comply with the Louisiana constitution or procedural statutes are not grounds for habeas relief.  It is not the duty of a federal habeas court to determine if the state courts properly applied state law.  Estelle v. McGuire, 112 S.Ct. 475, 479-80 (1991).  The Fifth Circuit has applied these rules to specifically reject a challenge to a state court's failure to comply with Article 894.1.  Haynes v. Butler, 825 F.2d 921, 924 (5th Cir. 1987).

To the extent Petitioner could be deemed to have both exhausted and presented to this court a federal claim related to his sentence, recent decisions from the Supreme Court also

make plain that any severity or proportionality attacks on the sentence in this case do not come close to meriting relief.  See Lockyer v. Andrade, 123 S.Ct. 1166 (2003) (habeas denied for videotape thief sentenced to two consecutive terms of 25 years to life under habitual offender law) and Ewing v. California, 123 S.Ct. 1179 (2003) (25 years to life upheld under state's three strikes law for golf club thief). The Supreme Court has never suggested that a 50 year sentence is unconstitutional for an armed robber who has a prior felony conviction.


**No Parole**

The armed robbery statute specifies that the sentence is to be without benefit of parole, probation, or suspension of sentence.  The habitual offender statute states that a sentence under it is to be without benefit of probation or suspension of sentence.  Petitioner argued on direct appeal that it was error for his enhanced sentence to preclude parole.  The state appellate court held that because the underlying armed robbery offense required the sentence to be without benefit of parole, the habitual offender sentence was to also be without parole. The court cited a number of Louisiana appellate decisions in support.  State v. Davenport, 978 So.2d at 1195.  Petitioner presents his argument to this court but, once again, he is not entitled to federal habeas relief based on an asserted  error of state law.  The state courts are free to interpret their own statutes.

**Ineffective Assistance of Counsel**

### A.  Introduction

Petitioner argues that his trial counsel was ineffective for several reasons.  To prevail on this claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

If a claim was adjudicated and denied on the merits by the state court, 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

### B.  Vouching; Co-Defendant Conviction

Petitioner argues that his counsel rendered constitutionally deficient performance when he did not object to the prosecutor's reference to his co-defendant mother's conviction and the prosecutor's vouching for the credibility of witnesses. Petitioner presented this claim in his post-conviction application (Tr. 487-90), and the trial judge acknowledged the claim in his written opinion.  This claim, along with other ineffective assistance claims, were generally discussed under the Strickland requirements, and the trial court concluded that

Petitioner did not present a factual basis for his contentions and failed to show how the outcome of the trial would have been different had counsel made different decisions.  Tr. 516-18.  The appellate court noted that Petitioner had raised three ineffective assistance claims and, "[w]hile the applicant was unsuccessful in demonstrating ineffective assistance of counsel in regard to two of the three claims, an evidentiary hearing is necessary to determine [the third]."  Tr. 602.  This claim was one of the two found lacking.

Counsel likely had a valid objection to the reference to the co-defendant's conviction, but it is often considered poor strategy to draw additional attention to harmful evidence.  Had counsel stood during the prosecutor's opening statement, objected to the reference to Petitioner's mother's conviction for her role in the same crime, and perhaps asked the judge to instruct the jury that they should disregard the evidence of that conviction, there is no reason to believe the verdict would have been different.  Considering the testimony of the witnesses that the mother was involved in the crime, the reference to the conviction was not especially harmful.  The lack of an objection to the reference did not deprive Petitioner of the counsel guaranteed by the Sixth Amendment and require that he be granted a new trial.

There is also no merit in the complaint that counsel did not object to the alleged vouching for the credibility of the witnesses.  The court reviewed the merits of the vouching claim above and agreed with the state appellate that there was no improper vouching by the prosecutor.  Failure of counsel to make a meritless objection is not ineffective assistance. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

### C.  Not Calling Officer J. M. Greene to Testify

Petitioner argued in his post-conviction application that counsel should have called police officer J. M. Greene as a witness.  He argued that Greene conducted the initial investigation and prepared a written police report that contained facts at odds with Mr. Jeffers' testimony.  These asserted discrepancies include the number of adults present at the house, to whom Jeffers gave away money, and whether Jeffers was drunk.  Petitioner also claims that Jeffers told Greene that $16,000 was taken.  The state courts summarily rejected this claim.

Officer Greene wrote in his short report (Tr. 14) that Mr. Jeffers described his events that day and said that after his group arrived at the house "everyone got drunk."  Jeffers was also noted to have "admitted to passing money out to kids and whoever wanted some," and this was probably when Petitioner saw the cash.  The report added that Petitioner was the son of Meacha Davenport, who knew about the money, so "it probably was a set up."

To the extent this information could be used to impeach Mr. Jeffers or Ms. Pouncy, defense counsel did so by questioning them extensively about how much each person drank, the handing out of money, and the like.  Little or nothing would have been gained by having Officer Greene take the stand and repeat the information in his report.  As for the reference to $16,000, that appears in a report written by Officer McConnell (Tr. 17) where he describes interviewing Meacha Davenport, who confessed to telling her son that Mr. Jeffers had about $16,000 and striking a deal with her son to receive some of the money for her help.  Defense counsel explored that figure at trial with Officer McConnell, who explained that it was

incorrect and likely a handwriting or transcription mistake.  The state court's rejection of this claim was not an objectively unreasonable application of the <u>Strickland</u> principles.

### D.  Failure to Interview Witnesses and Establish Alibi Defense

Petitioner argued in his post-conviction application that counsel should have interviewed certain witnesses and established an alibi defense.  The state appellate court directed an evidentiary hearing.  Petitioner was appointed counsel, and he testified at the hearing that on the day of the crime he was living with a friend in Jones, Louisiana, an hour or two away from Shreveport.  He testified that he told his attorney about this alibi and gave him a list of witnesses, including relatives Shirley Davenport (aunt) and Natasha Davenport (cousin).  He said that he gave the women his attorney's number and asked that they call the attorney.  Tr. 731-38.

Natasha Davenport testified that she lived in an apartment in the same building as the home the victim was visiting at the time of the robbery.  She said that her aunt (Meacha), Mr. Jeffers, and another young woman came over that afternoon to visit for awhile, and Jeffers was "pretty drunk or whatever."  Later on that evening she heard several people outside, and Jeffers was sitting in his truck and saying he had been robbed.  Natasha admitted that she was not at the party at the time of the crime.  She was in her home, and Petitioner was not with her.  She said she did not see him "none that day" and "can't say where he was at."  Natasha said she did not try to contact Petitioner's attorney.  Tr. 738-45.

Shirley Davenport testified that when she heard Petitioner had been arrested for robbery she thought he could not have done it, but she did not try to call his attorney, come

to court, or do anything else to help him.  She did not talk to Petitioner, and he did not give her his attorney's telephone number.  Shirley admitted that she was not at the party.  She was downstairs, and Petitioner was not with her.  She nonetheless said, "I know he wasn't there," but also conceded, "I don't know where he was."  Tr. 745-50.

Defense attorney Frank Zaccaria testified that Petitioner told him he had some people that Petitioner wanted him to talk to.  One of them was a man, whose name Zaccaria could not remember.  He spoke to the man on the phone, but he was not helpful and said he did not know anything about the case.  Another name given by Petitioner was Shirley Davenport. Zaccaria said he told Petitioner on numerous occasions that  he was leaving messages for witnesses to come talk to him, but they were not doing so.  Zaccaria insisted that the witnesses come to his office so that he could identify them, make sure he was talking to the actual witness, and have them complete an affidavit if they wanted to offer an alibi.  He suggested that he had encountered unexpected problems at trials when he did not follow that procedure. Petitioner never told Zaccaria that Natasha and Shirley were alibi witnesses; he said only that they knew what went on.  Zaccaria first saw that the women claimed to be alibi witnesses in a bar complaint filed after the trial.  Tr. 750-54.

The trial court found that defense counsel had attempted to contact the witnesses involved by having them come to his office.  The two witnesses who testified "had no idea where the defendant was at the time of the offense, but knew that the victims were located at the party, but could not offer an alibi effectively because of not knowing where the defendant was at any time."  The witnesses "had no knowledge of the whereabouts and could

not in effect offer an alibi defense for the defense, thus would not change the outcome of the case." The claim was denied. Tr. 759-60. The appellate court found that the trial court did not err. It noted that counsel testified that he attempted to contact the list of potential witnesses but "none of his telephone calls were returned." The court added that Shirley and Natasha Davenport admitted that they neither witnessed the robbery nor were with Petitioner at the time of the robbery. Thus, Petitioner had not demonstrated a reasonable probability that the outcome of the trial would have been different had counsel interviewed and called these witnesses. Tr. 856.

The state court adjudicated this claim on the merits, so habeas relief is not available unless the state court's determination under the Strickland standard was both incorrect and objectively unreasonable. Because the Strickland standard is a general one, the state court has latitude to reasonably determine that a defendant has not satisfied it. This makes the federal court's review doubly deferential. Knowles, 129 S.Ct. at 1420. "If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

This is not the sort of extreme malfunction that permits habeas relief. The trial court judge conducted a full and fair hearing and offered sound reasons, supported by the evidence, to reject the claim. The purported alibi witnesses would have been of virtually no use at trial

Page 22 of  24

since they did not witness the robbery and had no idea where Petitioner was at the time of the robbery.  The state court's decision on this claim was a reasonable one.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court

to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of February, 2015.

Mark L. Hornsby
U.S. Magistrate Judge